IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEX BAILEY,

      Plaintiff,                                  No. 2:08-cv-02410 KJN

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                             <u>ORDER</u>

/

        Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff contends that the Administrative Law Judge ("ALJ") in this case erred by: (1) failing to consider the opinions of certain treating doctors regarding plaintiff's mental functioning; (2) discounting plaintiff's testimony in part; and (3) not developing the record with respect to plaintiff's reading and math skill deficiencies. (<u>See</u> Dkt.

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301. (Dkt. Nos. 9, 12.) This case was reassigned to the undersigned by an order entered February 9, 2010. (Dkt. No. 22.)

No. 20.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 21.) Plaintiff did not file a reply brief.

For the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND[2]

Plaintiff was 37 years old at the time of the ALJ's decision denying SSI benefits and, with respect to education, he finished part of the ninth-grade and was unable to obtain a GED. (Administrative Transcript ("AT") 10, 27-28.) He has a history of mental health problems, intermittent incarceration, drug use and, at the time of the ALJ's decision, was homeless. (AT 30-32, 34.) Plaintiff has performed various types of work for various lengths of time while not incarcerated, including work as a dishwasher, a car washer, a casual laborer, and a janitor. (AT 28-30, 118.)

A.   Procedural Background

On August 10, 2005, plaintiff filed an application for SSI benefits, alleging a disability onset date of November 5, 1970, his date of birth. (AT 82-87.) The Social Security Administration denied plaintiff's application initially and upon reconsideration. (AT 48, 55, 57-61.) Plaintiff filed a timely request for a hearing, and the ALJ conducted a hearing on plaintiff's claims. (AT 23-42, 55.) Plaintiff, who was represented by counsel at the hearing, was the only person to testify at the hearing.

In a decision dated March 4, 2008, the ALJ denied plaintiff's application, finding that plaintiff could perform jobs that exist in significant numbers in the national economy.[3] (AT

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant the issues presented by the parties' respective motions.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security

10-18.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (AT 2-4.) Plaintiff subsequently filed this action.

  B.  Summary of the ALJ's Findings

    The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ noted that plaintiff had "been hired at a temporary agency as of March 4, 2007," but continued with the sequential analysis because "any work activity would be subject to a trial work period." (AT 11.) At step two, the ALJ concluded that plaintiff had previously suffered a "left medial orbital fracture" and had the following "severe" impairments: drug-induced brachycardia, high blood pressure, mild

---

Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

 The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

degenerative disc disease of the cervical spine, chronic lower back pain, an impulse control disorder, polysubstance abuse, post-traumatic stress disorder, a learning disorder, bipolar disorder with psychotic features, and an antisocial personality disorder.  (AT 11.)  Notably, plaintiff's motion for summary judgment does not allege error on the ALJ's part with respect to resolution of plaintiff's physical impairments, as opposed to plaintiff's mental impairments.  At step three, the ALJ determined that plaintiff's impairments, whether alone or in combination, did not meet or medically equal any impairment listed in the applicable regulations.  (AT 11-12.)

The ALJ further determined that plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c), except he has limitation in performing complex or detailed job tasks.  However, the claimant retains the ability to understand, remember and carry out simple one or two-step instructions.  The claimant also has the ability to relate and interact with others with minimal co-worker, supervisor and public contact and he can adapt to stresses common to a normal work environment.  The claimant also can maintain concentration, attention, persistence and pace and he can maintain regular attendance.  In other words, the claimant retains the ability to perform simple, unskilled work.

(AT 17; see also AT 14.)  Considering this RFC, the ALJ found at step four that plaintiff was not capable of performing past relevant work, which included work as a laborer performing "heavy exertional work." (AT 15-16, 17.)  However, at step five, the ALJ concluded, in reliance on plaintiff's RFC and Medical-Vocational Guideline 203.25, that plaintiff was not "disabled" within the meaning of the Act because plaintiff was able to perform jobs in significant numbers in the national economy.  (AT 16, 17.)

II.     ISSUES PRESENTED

Plaintiff presents three issues for review.  First, he argues that the ALJ failed to consider the opinions of treating doctors, Anthony Coppola, M.D., R. Lawrence, Ph.D, and Muniyapla Rajappa, M.D., regarding plaintiff's mental functioning.  Second, he argues that the ALJ's finding that plaintiff's testimony was not entirely credible is not supported by substantial

4

evidence in the record.  Finally, plaintiff argues that the ALJ erred by not referring plaintiff to "educational testing" to determine plaintiff's reading and mathematical ability.

III.   STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

2007).

IV. ANALYSIS

    A. <u>The ALJ Sufficiently Accounted for the Opinions of Drs. Coppola, Lawrence, and Rajappa</u>

Plaintiff's primary contention is that the ALJ committed error because he "failed to consider" the opinions of Drs. Coppola, Lawrence, and Rajappa regarding plaintiff's mental functioning. Dr. Coppola was a psychiatrist at the Deuel Vocational Institution who saw plaintiff in March 2006. (AT 188-89.) Dr. Lawrence was a clinician with the California Department of Corrections and Rehabilitation ("CDCR") who saw plaintiff in July 2006. (AT 184-88.) Dr. Rajappa was a physician at Sacramento County's Guest House Homeless Services Program who saw plaintiff in July 2007. (AT 138.)

Plaintiff makes a number of scattered factual assertions in an effort to substantiate the claimed error. He asserts that treating doctors diagnosed him with "Bipolar Disorder, Type I, Mixed with Psychotic Features, Post Traumatic Stress Disorder, Developmental (Learning) Disorder and Impulse Control Disorder." (Pl.'s Mot. For Summ. J. at 6.) Plaintiff further states that his hallucinations were not well-controlled with the medication Seroquel due to physical side effects. (<u>Id</u>.) Plaintiff also asserts that Dr. Coppola diagnosed him with "Impulse Control Disorder and Polysubstance Abuse with a [Global Assessment of Functioning ("GAF") score] of 50." (<u>Id</u>.) He states that Dr. Lawrence "noted that plaintiff suffered from anxiety and panic attacks when compliant with medication," recording symptoms including "history of poor impulse control or poor coping skills, Chronic serious illness or terminal illness, Anxious, agitated, or fearful, current insomnia, poor appetite or anorexia," and a risk of decompensation. (<u>Id</u>.) Additionally, plaintiff notes Dr. Rajappa's diagnosis of "Bipolar Disorder with Psychotic Features and a GAF of 49 with hallucinations." (<u>Id</u>. at 7.) Plaintiff also points out that he has had a poor history of interacting with others and that CDCR noted plaintiff's long history of mental illness. (<u>Id</u>. at 7-8.)

The Commissioner counters that the ALJ considered the opinions of all of plaintiff's treating doctors and included their diagnoses among plaintiff's "severe" impairments at step two. The Commissioner argues that the ALJ fully considered these doctors' opinions, credited their diagnoses as severe impairments, and properly resolved any ambiguities regarding plaintiff's functional limitations. He argues that plaintiff simply disagrees with how the ALJ interpreted the factual record and has failed to actually point out which opinions the ALJ improperly rejected.

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830. Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id. Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. Id. If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. Id. at 830-31; accord Valentine, 574 F.3d at 692. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

As an initial matter, plaintiff argues that the ALJ "failed to consider" his treating physician's opinions, not that the ALJ improperly rejected any specific opinion. To the extent that plaintiff argues the ALJ failed to consider the opinions of Drs. Coppola, Lawrence, and Rajappa, and plaintiff's other doctors, plaintiff is mistaken. The ALJ stated in his written

7

decision that he considered the entire record in making findings. (AT 10, 14, 17.) More importantly, the ALJ included the diagnoses cited by plaintiff among plaintiff's severe impairments at step two of the five-step analysis. At step two, the ALJ found that plaintiff had the following severe impairments: a previously suffered skull fracture, drug-induced brachycardia, high blood pressure, mild degenerative disc disease of the cervical spine, chronic lower back pain, an impulse control disorder, polysubstance abuse, post-traumatic stress disorder, a learning disorder, bipolar disorder with psychotic features, and an antisocial personality disorder. (AT 11, 17.) Moreover, at step three of the analysis, the ALJ considered at length plaintiff's mental health history and symptoms in resolving whether plaintiff's mental impairments met or equaled a listing in the regulations. (See AT 11-12.) Thus, the ALJ did not fail to consider plaintiff's doctors' opinions.

Although it is not entirely clear from plaintiff's brief, plaintiff also appears to suggest that the ALJ erred by not addressing the GAF scores that various doctors assigned to plaintiff over the years of treatment, which ranged from scores of 49 to 69.[4] (See Pl.'s Mot. For Summ. J. at 8; AT 137, 184, 188.) However, to the extent that plaintiff intends to make such an argument, it is unpersuasive because "[a]n ALJ does not commit legal error by failing to incorporate a GAF score into his disability assessment." Speelman v. Astrue, No. EDCV 09-1222 CW, 2010 WL 3001664, at *4 (C.D. Cal. July 29, 2010) (unpublished) (concluding that ALJ's failure to discuss a GAF score assigned by a treating physician was not legal error); see also McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (holding that the "ALJ's

---

[4] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV-TR"). A score of 49 fall within a range of scores that denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. (emphasis omitted). A score of 69 denotes: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. (emphasis omitted). The ALJ did not specifically address these GAF scores in his decision.

failure to address the three GAF scores specifically does not constitute legal error" where the RFC assessment took into account the claimant's mental impairments, was not inconsistent with the claimant's three limited duration GAF scores, and was supported by substantial evidence in the record)[5]; Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

The remainder of the facts raised by plaintiff are offered to undermine the ALJ's RFC assessment, not to challenge the ALJ's purported rejection of any particular treating doctors' opinion. In this regard, the ALJ was entitled to consider the record completely and resolve conflicts in the medical testimony and ambiguities in the record. See Tommasetti, 533 F.3d 1041-42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.") (citing Andrews, 53 F.3d at 1039-40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").

The ALJ's RFC determination is supported by substantial evidence in the record. Again, the ALJ arrived at the following RFC:

> [T]he claimant retains the ability to understand, remember and carry out simple one or two-step instructions. The claimant also has the ability to relate and interact with others with minimal co-worker, supervisor and public contact and he can adapt to stresses common to a normal work environment. The claimant also can maintain concentration, attention, persistence and pace and he can maintain regular attendance. In other words, the claimant retains the ability to perform simple, unskilled work.

(AT 17.)

---

[5] The Speelman and McFarland decisions relied, in part, on the following conclusion made by the Social Security Administration: "To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations. The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000).

The ALJ recounted at length plaintiff's mental history and supported this RFC with evidence that included the following. With respect to plaintiff's interpersonal relationships, he was in a relationship with a woman, although it had its "ups and downs" that plaintiff attributed to being homeless. (AT 12, 130.) Additionally, CDCR's records do not evidence "bizarre" behavior toward others. (AT 12.) This is not to say that plaintiff's time in prison was problem free. For example, he engaged in a three-day fast because he alleged that "the cops" were hassling him about the length of his hair and the prison would not find him an attorney. (AT 151.) However, this incident does not materially undermine the ALJ's conclusion.

The ALJ also noted that once no longer incarcerated, plaintiff was able to care for two dogs and could find food without problems, despite being homeless. (See AT 12, 130, 137, 138.)

The ALJ further observed that the record contains no evidence of treatment or prescriptions for medication for mental illness between the years 2000 and 2005. (AT 14.) The ALJ noted that in 2006 plaintiff presented as extremely angry and agitated and was referred for psychiatric evaluation. (AT 14, 188.) However, plaintiff was stabilized and the medical record suggest that plaintiff's 2006 episode was induced by drug use. (AT 188.)

The ALJ further observed that in July 2007 plaintiff had run out of his medication, Seroquel, and was seen by Dr. Rajappa. (AT 138.) Plaintiff's hygiene and grooming were marginal, and plaintiff appeared withdrawn and tired. Seroquel had helped plaintiff sleep. Dr. Rajappa gave plaintiff samples of Seroquel and scheduled a follow up appointment at the clinic.

The ALJ recounted in his decision that plaintiff returned for his follow up appointment in August 2007 and was on time for the appointment, dressed appropriately, was calm and cooperative, denied having mood swings, and stated that his hallucinations had stopped after resuming his treatment with Seroquel. (AT 14, 137.) Plaintiff also reported sleeping better. (AT 137.) The ALJ further related that plaintiff had been on time for an October 2007 follow up appointment, and that, among other things, plaintiff's hygiene and grooming were good, his

speech was clear with a normal rate and tone, he made good eye contact, and was calm and cooperative. (AT 130.)

In sum, the ALJ thoroughly reviewed the record and appropriately arrived at plaintiff's RFC. Plaintiff may disagree with the RFC, but the undersigned concludes that it is supported by substantial evidence and free of legal error.

  B.  <u>The ALJ's Credibility Determination is Supported By Substantial Evidence</u>

Plaintiff also contends that the ALJ improperly found him to be less than fully credible. Specifically, plaintiff contends that his testimony regarding his abilities was consistent with the record and, accordingly, the ALJ's conclusion that "plaintiff's testimony was not credible and that he maintains the social skills to perform at least simple tasks is not supported by substantial evidence." (Pl.'s Mot. for Summ. J. at 10.)

In <u>Lingenfelter v. Astrue</u>, the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

504 F.3d at 1035-36 (citations and quotation marks omitted).

Here, plaintiff challenges the ALJ's determination that plaintiff's testimony that reflected a lack of social skills to perform simple tasks was not credible. Plaintiff relies on the remainder of the record in support of his testimony and notes that he was in special education

11

1  earlier in life, in the juvenile criminal system, was "single celled" while incarcerated, that he had
2  problems with inmates and staff, he has a learning disorder, complained of illiteracy, and had
3  difficulty with others.  He also relies on his other mental symptoms discussed above.  The ALJ
4  noted all of this in discussing plaintiff's credibility.  (See AT 15.)

5          In finding plaintiff only partially credible, the ALJ stated:

> While the undersigned considered the foregoing testimony, the undersigned could not find the claimant's statements entirely credible or consistent with the record.  Although he testified he is unable to perform mathematical equations, he completed simple mathematical equations and serial threes during a prior evaluation in 2002.  The current record also fails to document any significant difficulties with reading or math which would preclude him from performing simple tasks.  In fact, the claimant was recently hired by a temporary agency to perform labor work.  The claimant's primary complaints have been that he has difficulty around people.  However, as shown above in the assessment of the claimant's functional limitations, the claimant generally is able to participate in routine interactions with others as demonstrated by his ability to maintain a relationship. The record also shows the claimant acts appropriately with authority figures such as prison officials and mental health providers.  Thus, he maintains the social skills to perform at least simple tasks, which ordinarily involve dealing primarily with objects, rather that with data or people (SSR 85-15).

(AT 15.)

        The parties do not identify a dispute regarding whether plaintiff had an underlying impairment which could reasonably be expected to produce some degree of the symptoms alleged.  The dispute centers on the ALJ's reasons for discounting plaintiff's testimony related to the impact of his math, reading, and social skills on his ability to perform simple, unskilled work.

        Initially, the undersigned concludes that the ALJ's credibility finding is unsupported insofar as the citation to "a prior evaluation in 2002" is concerned.  No such evaluation appears to be included in the Administrative Transcript, and the Commissioner has not explained this discrepancy in his brief.

        Nevertheless, the undersigned concludes that the ALJ provided sufficient reasons for only partially crediting plaintiff's testimony.  With respect to plaintiff's claim of illiteracy, the ALJ fairly concluded that the record does not "document any significant difficulties with reading

or math which would preclude [plaintiff] from performing simple tasks." (AT 15.) As noted above, the ALJ properly concluded that plaintiff could perform "unskilled" work requiring one or two-step instructions. "Unskilled work" is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 416.968(a). The record, including plaintiff's prior work history, supports that plaintiff can perform "unskilled work" and would not be limited in performing the basic tasks that the ALJ concluded he could perform.

        With respect to social interactions, the ALJ properly reasoned that the record supports that plaintiff has the ability to interact with others such that claims to the contrary are not credible. The ALJ properly noted that plaintiff appropriately interacted with prison officials and mental health providers. (AT 15.) This conclusion is demonstrated convincingly through records of plaintiff's treatment by mental health providers in 2007 which notes plaintiff's calm, responsive demeanor and a relatively normal social interaction. (See AT 130, 137, 138.) Moreover, in concluding that plaintiff could perform simple tasks, the ALJ relied on Social Security Ruling 85-15, which states that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people." In light of the foregoing, the undersigned concludes that the ALJ provided sufficient reasons for partially discounting plaintiff's testimony.

        C.      <u>The ALJ Did Not Fail to Develop the Record</u>

        Finally, plaintiff argues that the ALJ failed to fully and fairly develop the record by not referring plaintiff for "educational testing" to assess the impact of plaintiff's learning disability on his ability to work. Plaintiff contends that the diagnosis of Dr. Lawrence, that

13

plaintiff had a "Learning Disorder NOS"[6] (AT 185), created an ambiguity in the record that triggered the ALJ's duty to develop the record further.[7]  The Commissioner responds that the ALJ met his obligation to develop the record because: (1) plaintiff's attorney at the administrative hearing, who is the same attorney appearing before this court on plaintiff's behalf, was given the opportunity to raise additional issues at the hearing but failed to raise this issue; and (2) plaintiff was scheduled for two consultative examinations, but failed to show up to either of them and was repeatedly non-cooperative in developing the administrative record (AT 242-43).

In Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001), the Ninth Circuit Court of Appeals summarized an ALJ's duty to fully and fairly develop the record:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered.  This duty extends to the represented as well as to the unrepresented claimant. . . .  The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.  The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.

---

[6] The DSM-IV-TR defines "Learning Disorder Not Otherwise Specified" as follows:

> This category is for disorders in learning that do not meet criteria for any specific Learning Disorder.  This category might include problems in all three areas (reading, mathematics, written expression) that together significantly interfere with academic achievement even though performance on tests measuring each individual skill is not substantially below that expected given the person's chronological age, measured intelligence, and age-appropriate education.

DSM-IV-TR, § 315.9.

[7] Plaintiff also intimates in passing that Dr. Lawrence's notation that plaintiff "suffered from anxiety and panic attacks when compliant with medication" also triggered the ALJ's duty to further develop the record.  However, the undersigned finds nothing in the record that correlates any anxiety and panic attacks with plaintiff's learning disorder and, accordingly, does not address this passing, unsupported argument.

14

Id. at 1150 (citations and quotation marks omitted). However, the agency's regulations also provide: "If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind." 20 C.F.R. § 416.918(a); see also, e.g., McCann v. Astrue, No. EDCV09-01432 SS, 2010 WL 2803964, at *4 (C.D. Cal. July 15, July 15, 2010) (unpublished) ("Social Security regulations state that if a claimant does not have a 'good reason' for failing or refusing to take part in consultative examinations or tests arranged by the ALJ, then the ALJ may make a negative disability determination based solely on their failure to appear.").

Here, the Commissioner did not fail to develop the record. The record supports that plaintiff was referred to two consultative examinations that would have potentially developed the record with respect to plaintiff's learning disorder, but plaintiff failed to appear for those exams. (AT 242-43.) Accordingly, to the extent that the record was not fully developed with respect to plaintiff's learning disorder, plaintiff is to blame, and the ALJ could have dismissed plaintiff's claim on this ground alone.[8] 20 C.F.R. § 416.918(a). Plaintiff has not provided this court with any explanation or reason that would justify his failure to attend the consultative examinations.

Plaintiff's failure to assist in the development of the administrative record left the ALJ to make a finding based on the record before him. The ALJ stated that he fully considered the record, including medical records and plaintiff's prior work history, and determined that the record did not support a finding that plaintiff's difficulties with reading and math would "preclude him from preforming simple tasks." (AT 15.) Moreover, the ALJ's RFC was consistent with this observation in that it included a limitation that plaintiff could not perform

---

[8] Although not dispositive of the issue, the undersigned finds it curious that plaintiff's counsel failed to identify any ambiguity or unresolved issue with respect to plaintiff's learning disorder at the administrative hearing, but chose to raise this issue at this late date.

"complex or detailed job tasks" and could perform "simple one or two-step instructions." (AT17.) Accordingly, the undersigned concludes that the ALJ did not fail to adequately develop the administrative record.

## V. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied;
2. The Commissioner's cross-motion for summary judgment is granted; and
3. Judgment be entered in favor of the Commissioner.

DATED: August 25, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE